## IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
## AT KENAI

CAUTRESE ALEXANDER
SHAIRA SHAH

         Plaintiff(s),

vs.

CENTRAL PENINSULA HOSPITAL

         Defendant(s).

)
)
)
)
)
)
)
)
)
)
)

CASE NO. 3KN-26-00524CI

**SUMMONS AND
NOTICE TO BOTH PARTIES
OF JUDICIAL ASSIGNMENT**

**To Defendant:** CENTRAL PENINSULA HOSPITAL

You are summoned and required to file with the court a written answer to the complaint that accompanies this summons. Your answer must be filed with the court at

    125 Trading Bay Drive, Suite 100

    Kenai, Alaska 99611-7717

**within 20 days\*** after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff or plaintiff's attorney (if represented), Christina McDonogh, whose address is 3500 LaTouche Street, Suite 230A, Anchorage AK 99508 .

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief the plaintiff asked for in the complaint.

If you are not represented by an attorney, you must tell the court and all other parties in this case, in writing, of your current mailing address and of any future changes to your mailing address, email, and telephone number. Use court form *Notice of Change of Contact Information* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf.

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

### NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

This case has been assigned to

- ☒ Superior Court Judge Kelly J. Lawson
- ☐ Superior Court Judge Lance Joanis
- ☐
- ☐ Superior Court Judge Jason Gist
- ☐ District Court Judge Martin C. Fallon

CLERK OF COURT

06/15/2026
Date

By: *[signature]* McBride
Deputy Clerk

\*The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

# Alaska Trial Courts

# Certificate of Distribution

**Case Number:** 3KN-26-00524CI

**Case Title:** ALEXANDER, CAUTRESE ET AL VS. CENTRAL PENINSULA HOSPITAL KJL

---

The Alaska Trial Courts certify that the Summons and Notice to Both Parties of Judicial Assignment was distributed to:

| Recipient | Servicing Method | Distribution Date |
| --- | --- | --- |
| Christina McDonogh | Email | 06/15/2026 09:22:38 AM |

| Attachments | Distribution Date |
| --- | --- |
| • Complaint/Petition/Application | 06/15/2026 09:22:38 AM |

FILED IN THE ALASKA TRIAL COURTS ON 6/12/2026

**IN THE SUPERIOR COURT FOR THE STATE OF ALASKA**
**THIRD JUDICIAL DISTRICT AT KENAI**

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

CAUTRESE ALEXANDER,  )
SHAIRA SHAH,  )
  Plaintiffs,  )
v.  )
          )
CENTRAL PENINSULA HOSPITAL, ) Case No. 3KN-26-00524CI
  Defendant.  )

**COMPLAINT**

**COMES NOW,** Cautrese Alexander and Shaira Shah, by and through Yuraq Legal Services LLC attorney Christina McDonogh, who file this *Complaint* against defendant Central Peninsula Hospital and, as grounds, therefore allege as follows:

## I. JURISDICTION AND VENUE

1. Plaintiffs, CAUTRESE ALEXANDER and SHAIRA SHAH, live in Alaska and are in all ways qualified to maintain this action.

2. Defendant, CENTRAL PENINSULA HOSPITAL ("Defendant"), is a business licensed in good standing with the State of Alaska under license number 903924.

3. Venue is proper in the Superior Court of the Third Judicial District pursuant to Alaska Rules of Civil Procedure because the parties are located in the Third Judicial District and the Third Judicial District is where all claims arose.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

4. Plaintiffs timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").

    a. Plaintiff Alexander filed EEOC Charge No. 551-2026-04028 against Defendant.

    b. Plaintiff Shah filed EEOC Charge No. 551-2026-04030 against Defendant.

5. On April 10, 2026, the EEOC notified Plaintiffs that it had received their requests for Notices of Right to Sue and had forwarded those requests to the United States Department of Justice for action.

6. The EEOC further stated that the United States Department of Justice would act on the requests and issue the Notices directly to the parties.

7. Plaintiffs preserve their Title VII claims and will supplement or amend this *Complaint* upon receipt of the Notices of Right to Sue from the United States Department of Justice.

## II.   FACTUAL BACKGROUND

1. Defendant operates a regional medical facility providing services including emergency department ("ED") services, psychiatric and behavioral health services, crisis intervention, inpatient and outpatient mental health and substance abuse treatment programs.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

2. Defendant hired Shaira Shah ("Shah") as a locum tenens Crisis Clinician in the Psychiatric Emergency Services ("PES") department in or around September 16, 2024, under a contract due to expire on or about June 14, 2026.

3. Shah has been a Crisis Clinician for 5 years, after she spent 30 years working as an international attorney.

4. Defendant controlled the manner and means of Shah's work at Central Peninsula Hospital ("CPH").

5. Defendant controlled Shah's schedule, work location, patient assignments, duties, access to patients and hospital units, supervision, discipline, workplace rules, and continuation of work at CPH.

6. Shah could not set her own schedule or workload, choose her own patients, set her own duties, ignore CPH policies, or perform PES work independent of Defendant's direction.

7. Defendant additionally subjected its authority over Shah by, among other things, reassigning her patients, changing her duties, placing her on a PIP, investigating her complaints, and directing her to stop working immediately after she gave notice.

8. Shah greatly enjoyed her work at Defendant's facility and the Soldotna community.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

9. Shah considered Soldotna her home and intended to finish her career at the facility.

10. Cautrese Alexander ("Alexander") has been a crisis clinician and mental/behavioral health specialist for over two decades and is also certified as an International Certified Alcohol and Drug Counselor.

11. Defendant recruited Alexander to be a crisis clinician while she was living and working in Florida.

12. In reasonable reliance on Defendant's employment offer, and with the full intention of working at the facility until retirement, Cautrese Alexander moved all her belongings and her two cats (Sheldon and Amy), to Soldotna, Alaska.

13. On or about October 7, 2025, Alexander started her first day as a Crisis Clinician at Defendant's PES department.

14. Defendant awarded Alexander a $20,000 relocation bonus and a $10,000 sign-on bonus in exchange for a commitment to work at CPH for two years.

15. Alexander greatly enjoyed her work at Defendant's facility and the Soldotna community.

16. Alexander considered Soldotna her home and intended to finish her career at the facility.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

17. Alexander and Shah are black.

18. Alexander and Shah are the only people that are not white that worked in the entire Behavioral Health Department, which includes the PES team.

19. As Crisis Clinicians for the Defendant, Alexander and Shah each provided emergent mental health services to ED patients who are experiencing a mental health crisis. They also provided ongoing services to patients who are subject to a Title 47 Hold where they are housed in the Medical-Surgical Unit ("Med-Surg") until they can be transferred to a mental health facility.

20. During her time at CPH, Shah provided high-quality care to patients in crisis. She was well-regarded by patients, ED staff, Med-Surg staff, and other Crisis Clinicians.

21. During her time at CPH, Alexander provided high-quality care to patients in crisis. She was well-regarded by patients, ED staff, Med-Surg staff, and other Crisis Clinicians.

22. From September 2024 through January 2026, Shah received only positive reviews of her work and the care she provided.

23. On or about December 4, 2024, Jennifer Yoeman ("Yeoman") became the supervisor of the PES team.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

24. The entire PES team considered Yeoman to be a hands-off supervisor because she had almost no involvement with them in any way.

25. On or about November 11, 2025, Defendant hired Angeline Delgado ("Delgado") as a Counselor IV within the Behavioral Health department.

26. Delgado provided outpatient services and did not interact with Crisis Clinicians.

27. On or about December 28, 2025, Shah met with the Assistant Behavioral Director, John Tuttle, to discuss extending her contract to cover through December 2026 an anticipated shortage of PES staff.

28. Shah explained that she would like to become a permanent member of CPH after the extension was completed.

29. Tuttle stated that her assistance would be needed, he looked forward to her becoming a permanent part of the CPH team, and advised Shah to notify HR the week after the New Year.

30. On or about January 5, 2026, Defendant promoted Delgado to be the Director of the Behavioral Health Department.

31. On or about January 8, 2026, Shah attended a meeting with Delgado to reintroduce herself and to discuss the contract extension that Tuttle had authorized.

Case 3:26-cv-00278-SLG   Document 1-1   Filed 07/28/26   Page 8 of 56

Exhibit A, Page 8 of 56

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636 Fax: 907-318-6926
patsy@yuraqlegal.com

32. Shah began the meeting by introducing herself to Delgado and expressing a warm welcome to the PES team.

33. Delgado did not respond to the welcome and instead responded with a caustic and irrelevant phrase: "Nobody knows what you're doing here."

34. Shah was taken aback by the unnecessary remark but calmly explained her role as a Crisis Clinician. Shah explained that she was one of PES staff and worked in the office, the ED, the Med-Surg, and provided outpatient trauma therapy when necessary.

35. Delgado refused to discuss Shah's welcome or explanation and instead remarked that Shah would receive a new work assignment and all of her patients would be distributed to other clinicians.

36. Delgado similarly unilaterally reassigned Alexander to a different job description and reassigned her patients.

37. Delgado did not reassign any of the other PES staff members – all of whom are white.

38. On or about January 6, 2026, Delgado took away Shah's office without discussing the matter with her in any way.

39. Delgado designated the office to be used by float staff, leaving Shah able to use the office only when float staff were not present.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

40. The reassignment of Shah's office caused her humiliation, anger, distress, and a profound sense of degradation because it publicly communicated that she had been displaced from her established role. This action led Shah to have reasonable concern that she was being singled out because of her race.

41. On or about January 9, 2026, Delgado attended a management meeting in which Delgado told the other managers that "Shai is out," adding that Shah did not need to have an office as Shah would not be seeing patients for therapy.

42. Delgado stated to one white PES staff member that Shah was on her "shitlist" and she could not wait to "shoot the gun to fire her".

43. On January 10, 2026, after less than a week of working under Delgado, Shah was experiencing such severe emotional distress that she began to develop physical symptoms including constant nausea, severe anxiety, and insomnia and was placed on medication.

44. On or about January 12, 2026, Delgado met with Alexander to inform her that she was being reassigned from her contracted position as a Crisis Clinician to an outpatient clinician in the office, which is an entirely different job description.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

45. On January 12, 2026, Alexander reported to Defendant's Human Resources ("HR") department that she felt Delgado was attempting to reassign her to a position that was different than what was outlined on her contract when she was hired.

46. On or about January 19, 2026, the department's Intake Coordinator told Alexander she had been told to assign all of the department's assessments to Alexander.

47. The assessments are menial tasks that the Intake Coordinator had previously assigned the tasks between all clinicians to share the burden.

48. This change made Alexander realize that Delgado and Yeoman may be discriminating against her due to her race and reported her good faith concerns to HR.

49. During January 2026, when hospital staff learned how Delgado was treating Alexander and Shah, they remarked that it must be due to racism since Alexander and Shah provide high quality care as Crisis Clinicians and are the only PES staff that are not white.

50. On or about January 15, 2026, Delgado called a PES team meeting in which she was hostile to the black staff and remained pleasant to Crisis Clinicians Vanessa Andrews ("Andrews") and Piper Haney ("Haney"), who are white.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

51. In the meeting, Delgado discussed restructuring the PES workload. She reassigned all patients of Alexander and Shah, but did not remove the patients of Andrews or Haney.

52. When Andrews and Haney asked if she would remove their patients, Delgado responded to Andrews and Haney with sweet affirmations that "of course" they would be keeping their patients.

53. Andrews and Haney describe Delgado's behavior toward the black staff during this meeting as "awful."

54. Andrews and Haney describe Delgado's behavior toward the white staff in that meeting as "sweet".

55. Andrews and Haney each have expressed that they were very disturbed by the extreme contrast in how Delgado treated the different races.

56. At least one white staff member informed HR that they observed Delgado and Yeoman conduct race-based abuse toward Alexander and Shah.

57. They informed HR that they observed Delgado and Yeoman use a noticeably harsher tone, attitude, and demeanor when they spoke with black staff.

58. On January 16, 2026, Shah emailed a professional and neutral summary of the action items discussed in the January 15 meeting to the whole PES team via the PES Email Group email selection.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

59. The PES Email Group is a preorganized list of recipients built and maintained by CPH office staff and is regularly utilized by all PES staff to email the whole team.

60. Before sending the email, Shah reviewed the members of the PES Email Group and removed two people who no longer worked in the department and added Delgado, who had not yet been added to the list.

61. On or about January 21, 2026, Yeoman placed Shah on a Performance Improvement Plan ("PIP") because (1) Shah selected the PES Email Group which includes an "administrator2" recipient, (2) Shah allegedly did not follow office email protocol, and (3) Shah allegedly bypassed direct supervisors and inappropriately escalated matters regarding clinical assessments.

62. The PIP required that Shah complete email etiquette training.

63. Shah confirmed that "administrator2" is the email of the IT person that set up the email list and is regularly included in emails by PES staff.

64. Shah had no reason to believe that she was not permitted to use the PES Email Group email.

65. No white PES staff have been reprimanded for using the PES Email Group email.

Alexander et al. v. Central Peninsula Hospital, Case No. 3KN-26_____
Complaint

66. A white coworker, whose job description requires summarizing meetings and dispersing those summaries, confirmed that (1) the coworker knew of no office protocol for sending emails and (2) the coworker had never heard anything negative about her email summaries that were in a similar format to Ms. Shah's.

67. The PIP's allegation that Shah escalated matters inappropriately is based on an incident in which Shah declined to complete an Assessment and Treatment Plan for patients who did not present with substance abuse issues.

68. Shah explained to Yeoman that the Substance Abuse Treatment Manual states that ASAM Addiction Treatment Protocols are only used for patients who have substance use disorders and implementing them for all patients regardless of their substance abuse issues is clinically inappropriate and raised billing and compliance concerns.

69. On or about February 19, 2026, Yeoman called Alexander via speakerphone. On the call, Yeoman accused Alexander of being in dereliction of duty because Alexander was not covering a specific group therapy session.

70. Alexander informed Yeoman that she had never been scheduled for that group therapy session and Yeoman responded by abruptly hanging up the phone.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

71. When Alexander returned to the office, Alexander made a professional request to Yeoman to please not speak to her like that again.

72. Yeoman responded via email in which she accused Alexander of being disrespectful.

73. Yeoman later reported to other people that Alexander was verbally aggressive in this particular exchange, and her aggression caused people in the office to be fearful.

74. Alexander is confident that she did not behave aggressively, and that nobody was fearful. She invited any interested parties to review the office security cameras to confirm as much.

75. Alexander informed HR that she found this accusation especially disturbing as it seemed to perpetuate the racist stereotype that her behavior was that of an angry black woman.

76. After this event, Delgado informed Alexander that Alexander was required to be present from 9:00-5:30 every day.

77. Alexander complied with this requirement.

78. On or about January 23, 2026, Alexander and Shah submitted a written report of Delgado and Yeoman's discrimination to Defendant's HR. In their report, the pair informed HR that they can recommend a list of witnesses both in the

PES team and outside of the PES team that will attest to the discriminatory behavior.

79. HR did not request more information from Alexander or Shah and they did not request the list of witnesses.

80. HR staff were dismissive of Alexander and Shah's concerns and complained about the detailed records they provided to document the discrimination.

81. On January 26, 2026, Shah made an additional report to HR that she was experiencing physical symptoms due to the untenable work environment.

82. In the same submitted report, Shah presented HR with a detailed document to support her good faith report that she and Alexander were receiving race-based disparate treatment at the hands of Delgado and Yeoman.

83. HR expressed that it would need to review Shah's document and would follow up with her.

84. Shah was never contacted about this document.

85. On January 29, 2026, Shah was physically present and working in the office immediately adjacent to Yeoman's office for virtually the entire workday. Although Yeoman could have spoken with Shah at any time during the workday, Yeoman made no effort to do so while Shah was present.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636 Fax: 907-318-6926
patsy@yuraqlegal.com

86. Instead, approximately eight minutes after Shah left the workplace, Yeoman sent Shah text messages in which she questioned whether she would be at work the following day and, if not, when she would next be present.

87. Yeoman sent these messages just after Shah left work for the day despite having access to Shah's schedule through Acuity, which reflected that Shah was off on January 30 and January 31, 2026, and scheduled to begin on-call coverage on February 1, 2026.

88. On January 30, 2026, Shah expressed concern to Delgado, Yeoman, and HR about this event and all previous negative treatment.

89. In this report, Shah expressed concern that Delgado and Yeoman's conduct made Shah feel that Shah was being targeted due to her race, that the continued targeting was causing her clear signs of physical and emotional distress.

90. Alexander experienced such extreme emotional distress that she developed severe anxiety, depression, persistent nausea, high blood pressure, and insomnia. She was placed on medication for her symptoms.

91. On or about February 18, 2026, Alexander's health care provider noted an abnormal change in her blood pressure and placed her on a round-the-clock blood pressure monitor.

92. The monitor revealed that Alexander's blood pressure was negatively affected by Delgado and Yeoman's racism because her blood pressure reached a dangerously high level during work hours and dropped to normal lows outside of work hours.

93. Alexander was required to take blood pressure medication to prevent discrimination from causing irreversible harm to her health.

94. In addition to the blood pressure issue, Alexander's provider also noted that she developed depression and sleep disruption as a result of the discrimination she experienced.

95. On or about February 3, 2026, Delgado sent an email to the PES with a new set of department rules that was purported to apply to everyone. These rules included an extremely difficult schedule, unusual expanded duties, and harmful policy restrictions ("February 3 Email").

96. A white employee replied to the entire email group with an objectively aggressive tone.

97. The white employee was never reprimanded for her aggressive tone.

98. Alexander and Shah made a point to follow the expectations that Delgado outlined in the February 3 Email with exactness.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

99. No white staff made any effort to follow the expectations and some even asked Shah why she was making the effort.

100. White PES staff never received so much as a negative word about their failure to meet the expectations of the February 3 Email.

101. Beginning on or about February 1, 2026, Delgado scheduled Shah as the only Crisis Clinician responsible for providing PES services until the 8th of February because Andrews and Haney were out of state on vacation.

102. Delgado required Shah to work fourteen hour shifts for each of the days between, and including, February 1 and February 8.

103. Delgado had scheduled her more intense and difficult rules from the February 3 Email to start on February 5, 2026, even though she had full advanced knowledge that Shah would be the only clinician available.

104. In addition, Alexander could have provided additional Crisis Clinician services during this period, but Delgado refused to permit Alexander to work any of the Crisis Clinician shifts based on Delgado's prior unilateral decision to remove Alexander from her contracted role.

105. Shah recommended that if Alexander was not permitted to cover the services, Yeoman might be the appropriate stand-in given her status as a supervisor.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636 Fax: 907-318-6926
patsy@yuraqlegal.com

Yeoman refused and stated that her "brain would fry" if she had to work that extra time.

106. All Crisis Clinicians observed that, not only could Delgado have scheduled Alexander to work her contracted job or required Yeoman to work some of Shah's shifts, she could easily have started the rules from her February 3 Email to begin when Alexander and Haney were back, which made them believe that this was another attempt to target Shah.

107. Neither Delgado nor Yeoman offered any further assistance or support to Shah for the eight concurrent PES On Call days including the fourteen-hour shifts that Shah was required to work as the only Crisis Clinician on the Kenai Peninsula.

108. Yeoman emailed Shah with an invitation to meet on Wednesday February 4, 2026, at 1:00 p.m. Yeoman suggested that Shah select the location of the meeting. Shah selected the Med-Surg Unit so she could stay near her patients during her shift.

109. On February 4, 2026, Shah waited until 3:30p.m. but Yeoman never arrived at the meeting. Shah texted Yeoman who never responded.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

110. Shah intended to use the meeting time to explain to Yeoman that she was feeling unwell and may not be able to finish the eight days she was scheduled to work alone.

111. Because Yeoman did not show up or respond to inquiries, Shah shared this update to Yeoman via text message.

112. Yeoman never responded.

113. By the end of February 4, 2026, Shah had already clocked well over forty hours of active care to patients and the work related to that care.

114. Shah was scheduled to work four more fourteen-hour shifts before she finished this eight-day window that Delgado scheduled.

115. On February 5, 2026, Shah sought medical care for her worsening health. Her medical provider determined that Shah would be unable to work until February 9, 2026.

116. Shah promptly provided a medical note with this information to Yeoman, Delgado, and HR.

117. Delgado and Yeoman later implied to coworkers that Shah intentionally called out on February 5th to cause trouble for Delgado's new schedule.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

118. When Shah returned to work on February 9, 2026, she followed up with HR about her complaints, reported continued targeting, and asked whether the department has investigated or was going to sweep this matter under the rug.

119. At that time, HR finally interviewed Andrews and Haney.

120. On or about February 17, 2026, Shah submitted an additional written complaint to HR that documented continued targeting and disparate treatment by Delgado and Yeoman.

121. Shah reported that Delgado and/or Yeoman stated to CPH staff that "Shaira is causing trouble," and Shah intentionally called out sick, despite Shah working tirelessly to meet all expectations of Delgado, and despite the doctor's note.

    a. The statements that Shah was "causing trouble" and had intentionally called out sick humiliated her, damaged her professional reputation, and reinforced her perception that Defendant was portraying one of the only black Crisis Clinicians as dishonest and problematic while extending grace and respect to similarly situated white employees.

122. Shah also informed HR that Delgado and Yeoman would frequently state to other coworkers that they did not know where Shah was even though Shah

could always be found providing Crisis Clinician services in the ED and/or the Med-Surg.

123. Delgado and Yeoman did not exhibit the same behavior toward white staff members who, unlike Alexander and Shah, often left CPH's PES office for personal activities such as errands, meals, or appointments.

124. Alexander was required by Delgado to remain in the PES office until 5:30 p.m.

125. After Alexander was frequently the only person left in the PES office after 4:30 every day, she began to record video evidence of the empty office.

126. Alexander experienced humiliation, anger, distress, and indignity from being singled out and required to remain in the PES office until 5:30 p.m.; this disparate requirement reinforced the racial disparity between the black and white employees.

127. Alexander and Shah put all effort into fulfilling Delgado and Yeoman's expectations.

128. In contrast, the white PES staff did not put effort into meeting the expectations of Delgado and made no efforts to hide this.

129. Shah further informed HR that ED staff expressed that they were appalled at how poorly Delgado and Yeoman had been treating Alexander and Shah.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

130. Staff expressed that Alexander and Shah were being treated differently from their white coworkers.

131. At least one staff expressed willingness to share their observations of Delgado and Yeoman's racist behavior with HR.

132. HR was informed of the staff member's willingness.

a. Upon information and belief, HR never contacted this ED coworker.

133. On or about February 18, 2026, HR met with Shah.

134. HR was once again dismissive and further complained about Alexander and Shah's detailed reports of discrimination.

135. HR suggested to Shah that the disparate treatment based on race was merely a miscommunication.

136. On or about February 27, 2026, Delgado informed Alexander that Alexander might be able to return to work as a Crisis Clinician sometime in late April or May but until then, Alexander had to live up to the new standards outlined in the February 3 Email.

137. Alexander explained that Alexander's employment agreement states that Alexander was hired as a Crisis Clinician, not as an outpatient provider. Alexander emphasized that she undertook the extreme burden of relocating from Florida to Soldotna specifically to work as a Crisis Clinician.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

138. Delgado responded to Alexander with these flippant, dismissive, and offensive remarks: "and? Change happens."

139. In the same conversation, Alexander also pointed out that only Alexander and Shah met Delgado's standards and that the white staff made no effort to do so.

140. Delgado did not respond to this comment.

141. On or about February 27, 2026, Delgado and Yeoman issued a formal reprimand against Shah for alleged billing errors, despite Shah's explanation that Shah worked directly with billing staff for all billing and any alleged error had already been discussed with, and approved by, the billing team.

142. Despite Shah's report of race-based disparate treatment and retaliation, Defendant failed to take effective corrective action to protect Shah from continued targeting by Delgado and Yeoman.

143. At no time did HR place either Delgado or Yeoman on administrative leave, neither paid nor unpaid.

144. Upon information and belief, HR only interviewed the Andrews and Haney, who expressly stated that they observed Delgado and/or Yeoman discriminate against Alexander and Shah due to their race.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

145. Upon information and belief, at no time did HR interview any other witness recommended by Alexander and/or Shah.

146. A white employee sent an anonymous message to each person in HR expressing concern about the misconduct the white employee witnessed, and requested that HR schedule a meeting with members of the department.

147. HR did not schedule a meeting.

148. In the subsequent PES staff meeting, Delgado informed the Behavioral Health Department that if they have a problem with her, they should not go to HR but should report to their supervisor or to Delgado herself.

149. Delgado's statement led Alexander and Shah to reasonably believe that Delgado believed that they were the source of the anonymous message, and that HR would protect Delgado and not protect them.

150. On or about March 2, 2026, the workplace had become untenable as Shah could no longer tolerate the focused targeting and Defendant's unwillingness to protect her from discrimination. As a result of the untenable work environment created by the repeated and relentless discriminatory targeting, Shah submitted her two-week notice of resignation.

151. Within hours, Defendant requested that Shah leave the position immediately and directed her to cease the PES coverage for which she was scheduled.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

152. Delgado simultaneously told employee Andrews that Delgado and HR had fired Shah.

153. Andrews expressed that she did not think that was true because Shah had submitted her resignation.

154. According to Andrews, Delgado responded that Shah must have resigned after her employment was terminated.

155. Shah never received notice that Defendant terminated her employment.

156. On or about March 2, 2026, Alexander tendered her resignation due to the untenable work environment she experienced as a result of Delgado and Yeoman's racial discrimination and Defendant's unwillingness to protect her from their illegal actions.

157. Alexander and Shah continue to experience long-lasting health issues.

158. Shah is recovering from the severe emotional distress she experienced as a result of Defendant's racial discrimination and retaliation, but still experiences severe anxiety, depression, nausea, high blood pressure, low blood sugar, and insomnia, for which she has been medicated.

159. She has found difficulty finding employment in the Soldotna area.

160. Alexander is recovering from the severe emotional distress she experienced as a result of Defendant's racial discrimination and retaliation and still

experiences health issues such as anxiety, depression, brain fog, hypertension, insomnia, and mood swings.

161. At the time of this filing, Alexander obtained subsequent employment in Anchorage, Alaska. The unexpected move has caused significant expense and caused further distress for her and her two cats, Sheldon and Amy.

   a. Sheldon and Amy are stuck in Soldotna until Alexander can secure permanent housing.

   b. This separation has caused Sheldon to develop significant health issues and has lost an alarming amount of weight.

162. Alexander and Shah timely filed charges of discrimination with the Equal Employment Opportunity Commission.

163. Alexander filed EEOC Charge No. 551-2026-04028 against Defendant.

164. Shah filed EEOC Charge No. 551-2026-04030 against Defendant.

165. On April 10, 2026, the EEOC notified Plaintiffs that it had received their requests for Notices of Right to Sue and had forwarded those requests to the United States Department of Justice for action.

166. The EEOC further stated that the United States Department of Justice would act on the requests and issue the Notices directly to the parties.

Case 3:26-cv-00278-SLG     Document 1-1     Filed 07/28/26     Page 28 of 56

Exhibit A, Page 28 of 56

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

167. Plaintiffs have satisfied, or will satisfy before pursuing their Title VII claims, all administrative prerequisites required by law.

## III. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Race Discrimination

168. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

169. Alexander and Shah are black.

170. Defendant is an employer subject to Title VII.

171. Defendant is an employer within the meaning of the Alaska Human Rights Act.

172. Alexander and Shah were Defendant's employees and/or joint employees.

173. Defendant controlled the manner, means, schedule, location, duties, patient assignments, supervision, discipline, workplace access, and continuation of Alexander and Shah's work at CPH.

174. Defendant is liable under 42 U.S.C. § 1981 because Plaintiffs had employment, contractual, and/or prospective contractual relationships with Defendant, and § 1981 protects Plaintiffs' right to make, perform, modify, enforce, and enjoy the benefits of contracts without racial discrimination.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

Alexander et al. v. Central Peninsula Hospital, Case No. 3KN-26_____        27 of 54
Case 3:26-cv-00278-SLG     Document 1-1     Filed 07/28/26     Page 29 of 56
Exhibit A, Page 29 of 56

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

175. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

176. Defendant is liable for the acts and omissions of Delgado, Yeoman, Human Resources personnel, and other managers because (1) Delgado, Yeoman, and Human Resources acted within the scope of their employment, used authority delegated by Defendant, (2) Defendant controlled the terms and conditions of Plaintiffs' work; (3) Defendant had actual notice of their conduct; and because (4) Defendant failed to take prompt, effective, corrective action.

177. At all times, Plaintiffs were qualified for their positions and performed their duties competently.

178. Defendant treated Plaintiffs less favorably than similarly situated white employees in the terms, conditions, professionalism, privileges of employment, job expectations, and performance demands.

179. Defendant's discriminatory treatment included, but was not limited to: removal or restriction of PES duties, removal of designated office space, reassignment of patients, reassignment of work, heightened scrutiny, false or exaggerated criticism, disparate discipline, disparate enforcement of

workplace standards, failure to investigate complaints, demand of working hours, lack of additional staff support, failure to protect Plaintiffs from discriminatory workplace behavior, and constructive discharge.

180. As to Shah, Defendant removed or reassigned her patients, removed her from her office, placed her on a Performance Improvement Plan, subjected her to false or exaggerated criticism, held her to standards not enforced against white employees, overloaded her PES schedule, ignored her complaints, and forced her resignation.

181. As to Alexander, Defendant removed her from the PES Crisis Clinician role, reassigned her to outpatient office duties, singled her out for assessments and office scrutiny, accused her of stealing time by leaving work early, accused her of being in dereliction of duty, held her to standards not enforced against white employees, ignored her complaints, and forced her resignation.

182. Defendant received actual notice of Plaintiffs' discrimination complaints and received corroborating information from white coworkers who observed the disparate treatment.

183. Defendant failed to take effective corrective action, failed to protect Plaintiffs, and retained Delgado and Yeoman despite repeated complaints,

corroborating witness information, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

184. Defendant thereby ratified, approved, tolerated, and/or permitted the discriminatory conduct.

185. Plaintiffs' race was a motivating factor and/or substantial factor in Defendant's treatment of Plaintiffs under AHRA and Title VII.

186. Plaintiffs' race was a but-for cause of Defendant's interference with Plaintiffs' contractual and employment rights under 42 U.S.C. § 1981.

187. Plaintiffs preserve their Title VII claims pending issuance of the Notices of Right to Sue by the United States Department of Justice.

188. Defendant's conduct violated the Alaska Human Rights Act, Title VII, and 42 U.S.C. § 1981.

189. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages, including lost wages, lost benefits, lost contractual expectancy, relocation-related damages, emotional distress, physical symptoms, and other damages to be proven at trial.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

190. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

191. Plaintiffs engaged in protected activity when they complained to Defendant's Human Resources personnel, supervisors, and managers about race discrimination, disparate treatment, hostile work conditions, and retaliation.

192. Defendant knew Plaintiffs engaged in protected activity.

193. Defendant was an employer subject to Title VII.

194. Defendant was an employer within the meaning of the Alaska Human Rights Act.

195. Alexander and Shah were Defendant's employees and/or joint employees.

196. Defendant controlled the manner, means, schedule, location, duties, patient assignments, supervision, discipline, workplace access, and continuation of Alexander and Shah's employment at CPH.

197. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

Alexander et al. v. Central Peninsula Hospital, Case No. 3KN-26_____          31 of 54
Complaint
Case 3:26-cv-00278-SLG   Document 1-1   Filed 07/28/26   Page 33 of 56
Exhibit A, Page 33 of 56

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

198. Defendant is liable for the retaliatory acts and omissions of Delgado, Yeoman, Human Resources personnel, and other managers because (1) they acted within the scope of their employment, (2) used authority delegated by Defendant, (3) controlled Plaintiffs' working conditions, and/or (4) because Defendant had actual notice and failed to take prompt and effective corrective action.

199. After Plaintiffs complained, Defendant subjected them to materially adverse treatment.

200. Defendant's retaliatory conduct included, but was not limited to, continued targeting, increased scrutiny, false or exaggerated criticism, reassignment or restriction of duties, disciplinary action, failure to conduct a good faith investigation, failure to interview key witnesses, refusal to protect Plaintiffs, and constructive discharge.

201. Defendant's conduct would deter a reasonable employee from making or supporting a discrimination complaint.

202. Defendant failed to correct the retaliatory treatment of Plaintiffs, despite receiving repeated complaints and corroborating witness information.

203. Defendant retained Delgado and Yeoman despite notice that the only non-white employees experienced and therefore reported discriminatory and retaliatory treatment under her supervision.

204. Defendant thereby ratified, approved, tolerated, and/or permitted the retaliatory conduct.

205. Plaintiffs' protected activity was a motivating factor and/or substantial factor in Defendant's adverse treatment under AHRA and Title VII.

206. Plaintiffs' protected opposition to race discrimination and race-based interference with employment and contractual rights was a but-for cause of Defendant's retaliatory conduct under 42 U.S.C. § 1981.

207. Defendant's conduct violated the Alaska Human Rights Act, Title VII, and 42 U.S.C. § 1981.

208. Plaintiffs preserve their Title VII claims pending issuance of the Notices of Right to Sue by the United States Department of Justice.

209. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages, including lost wages, lost benefits, lost contractual expectancy, relocation-related damages, emotional distress, physical symptoms, and other damages to be proven at trial.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

## THIRD CAUSE OF ACTION
## Hostile Work Environment

210. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

211. Plaintiffs were subjected to unwelcome conduct in the workplace.

212. The unwelcome conduct occurred because of Plaintiffs' race and/or because Plaintiffs opposed race discrimination.

213. Defendant was an employer subject to Title VII.

214. Defendant was an employer within the meaning of the Alaska Human Rights Act.

215. Alexander and Shah were Defendant's employees and/or joint employees.

216. Defendant controlled the manner, means, schedule, location, duties, patient assignments, supervision, discipline, workplace access, and continuation of Alexander and Shah's work at CPH.

217. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

218. Defendant is liable for the hostile work environment because its supervisors, managers, Human Resources personnel, and agents used authority delegated

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

by Defendant to control Plaintiffs' job duties, patient assignments, discipline, schedules, access to work, and working conditions.

219. Defendant is also liable because it had actual notice of the hostile work environment and failed to take prompt, effective, and reasonable corrective action.

220. The hostile conduct was severe or pervasive enough to alter the terms and conditions of Plaintiffs' employment and create an abusive working environment.

221. Defendant's conduct included, but was not limited to, stripping or restricting duties, reassigning patients, imposing unequal standards, subjecting Plaintiffs to heightened scrutiny, falsely criticizing Plaintiffs, disciplining Plaintiffs for conduct tolerated from white employees, ignoring corroborating witnesses, and failing to stop discriminatory supervisors after repeated complaints.

222. Defendant knew or should have known about the hostile work environment because (1) Plaintiffs repeatedly reported the conduct to Human Resources and management, (2) other staff members made separate reports about the disparate treatment, and (3) there was at least one anonymous report.

223. Defendant failed to take prompt, effective, and reasonable corrective action.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

224. Defendant's failure to act allowed the hostile work environment to continue and worsen.

225. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness information, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

226. Defendant thereby ratified, approved, tolerated, and/or permitted the hostile work environment.

227. Plaintiffs preserve their Title VII claims pending issuance of the Notices of Right to Sue by the United States Department of Justice.

228. Defendant's conduct violated the Alaska Human Rights Act, Title VII, and 42 U.S.C. § 1981.

229. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages, including lost wages, lost benefits, lost contractual expectancy, relocation-related damages, emotional distress, physical symptoms, reputational harm, and other damages to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Constructive Discharge**

230. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

231. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

232. Defendant is liable for their acts and omissions because they (1) acted within the scope of their employment, (2) used authority delegated by Defendant, controlled Plaintiffs' working conditions, and/or (3) because Defendant had actual notice and failed to take prompt and effective corrective action.

233. Defendant knowingly permitted and/or deliberately created intolerable working conditions for Plaintiffs.

234. Plaintiffs repeatedly reported the discriminatory, retaliatory, and hostile conditions to Defendant.

235. Defendant failed to take effective corrective action.

236. Instead, the targeting, scrutiny, discipline, disparate treatment, and workplace hostility continued and worsened.

237. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness information, and the departure of both black PES clinicians under their supervision.

238. The workplace became intolerable because Defendant failed to address or halt the Plaintiffs' repeated complaints of discriminatory and retaliatory conduct.

Instead of investigating and correcting the alleged misconduct, Defendant allowed the behavior to continue, took no meaningful steps to protect the Plaintiffs, and permitted the alleged targeting and hostility to escalate, thereby creating an objectively intolerable working environment.

239. A reasonable person in Plaintiffs' positions would have felt compelled to resign.

240. Plaintiffs resigned because the working conditions were intolerable.

241. Plaintiffs' resignations constitute constructive discharge.

242. As a direct and proximate result of Defendant's constructive discharge of Plaintiffs, Plaintiffs suffered damages, including lost wages, lost benefits, lost contractual expectancy, relocation-related damages, emotional distress, physical symptoms, and other damages to be proven at trial.

### FIFTH CAUSE OF ACTION
### Breach of Contract

243. Plaintiff Shah realleges and incorporates all preceding paragraphs as though fully set forth herein.

244. Plaintiff Shah had a valid employment contract governing her work as a Crisis Clinician for Defendant that was valid until June 2026.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

245. Defendant's agents had approved her plan to extend her contract through December 2026.

246. Plaintiff Shah performed her obligations under the contract or was excused from further performance by Defendant's conduct.

247. Although Plaintiff Shah's placement involved a *locum tenens* agency, Defendant controlled Shah's day-to-day duties, schedule, work location, patient assignments, supervision, discipline, workplace access, and continuation of work at CPH.

248. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

249. Defendant is liable for their acts and omissions because Delgado, Yeoman, Human Resources personnel and other managers (1) acted within the scope of their employment, (2) used authority delegated by Defendant, (3) controlled Shah's duties and working conditions, and/or because (4) Defendant had actual notice and failed to take prompt and effective corrective action.

250. Defendant breached the contract by materially altering Shah's duties, removing or reassigning her patients, interfering with her ability to perform

her contracted role, refusing to honor the expected continuation or extension of her work, constructively discharging her, and/or ending her work before the completion of the contractual period.

251. Defendant failed to address the intolerable work environment that Delgado and Yeoman created thereby constructively discharging her and further depriving Shah of any meaningful opportunity to complete her contractual relationship under lawful and nondiscriminatory conditions.

252. Defendant's conduct deprived Plaintiff Shah of the benefit of her bargain.

253. As a direct and proximate result of Defendant's breach, Plaintiff Shah suffered damages, including approximately ten months of lost wages, lost benefits, lost employment opportunities, emotional distress damages where recoverable, and other damages to be proven at trial.

### SIXTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing in Employment

254. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

255. Plaintiffs had employment and/or contractual relationships with Defendant.

256. Every employment relationship includes an implied covenant of good faith and fair dealing.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

257. The implied covenant of good faith and fair dealing imposes upon the Defendant a duty to not act in a manner that unfairly deprive Plaintiffs of the benefits of their employment relationships.

258. Defendant owed Plaintiffs a duty to treat like employees alike.

259. Defendant owed Plaintiffs a duty to act in a manner that a reasonable person would regard as fair.

260. Defendant breached these implied covenants under the subjective and/or objective components of good faith and fair dealing.

261. Under the subjective component, Defendant acted with the specific intent or purpose to deprive Plaintiffs of the benefits of their employment relationships, including Shah's continued Crisis Clinician placement and anticipated contract extension, and Alexander's PES Crisis Clinician position, two-year employment expectancy, relocation-related benefits, sign-on benefits, and continued employment opportunity.

262. Under the objective component, Defendant acted in a manner that a reasonable person would not regard as fair by targeting Plaintiffs for removal, stripping or changing their duties, treating them differently than white employees, refusing to fairly investigate their complaints, and permitting

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

Delgado and Yeoman to continue exercising authority over them after Defendant had notice of their conduct.

263. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

264. Defendant is liable for their acts and omissions because Delgado, Yeoman, Human Resources personnel, and other managers (1) acted within the scope of their employment, (2) used authority delegated by Defendant, (3) controlled Plaintiffs' employment relationships, and/or (4) because Defendant had actual notice and failed to take prompt and effective corrective action.

265. Defendant breached the implied covenant by acting arbitrarily, unfairly, discriminatorily, in bad faith, and failing to treat like employees alike.

266. Defendant's breach included, but was not limited to, treating Plaintiffs worse than white employees, imposing unequal standards, subjecting Plaintiffs to false or exaggerated discipline, refusing to fairly investigate their complaints, ignoring corroborating witnesses, and permitting supervisors to continue targeting Plaintiffs after notice.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

267. As to Plaintiff Shah, Defendant subjected her to false discipline, disciplined her for conduct white employees openly engaged in without consequence, placed her on a baseless PIP, falsely accused her of performance and billing issues, stated that Shah was on the "shit list" within days of Delgado assuming authority over her, announced that "Shai is out" before any legitimate process occurred, scheduled her for 192 hours of coverage despite other staff being available, disparaged her medical leave after she provided a medical note, deprived her of the benefit of her Crisis Clinician placement, and forced her to resign from her position despite long-term plans to work in the facility.

268. As to Plaintiff Alexander, Defendant deprived her of the PES Crisis Clinician position for which she relocated from Florida to Alaska and moved her belongings, and brought her two cats; reassigned her to an entirely different job duty, removed her patients, required her to perform menial administrative tasks previously shared by all clinicians, subjected her to schedule requirements that white employees openly disregarded, accused her of dereliction of duty for a group she was never scheduled to cover, accused her of stealing time when she was working in other hospital locations, characterized her as an angry black woman and/or disrespectful, aggressive,

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

or frightening without basis, dismissed her contractual concerns with the statement "and? Change happens", and forced her from the employment opportunity she had accepted and relied upon.

269. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness information, and the departure of both black PES clinicians under their supervision.

270. Defendant failed to correct Delgado and Yeoman's unfair, unequal, and bad-faith conduct.

271. As a direct and proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiffs suffered damages, including lost wages, lost benefits, lost contractual expectancy, relocation-related damages, emotional distress damages where recoverable, and other damages to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Promissory Estoppel

272. Plaintiff Alexander realleges and incorporates all preceding paragraphs as though fully set forth herein.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

273. Defendant promised and represented to Alexander that she would be employed as a PES Crisis Clinician at CPH and induced her to relocate to Alaska in reliance upon that position.

274. Defendant further offered Alexander a sign-on bonus and relocation/travel bonus in exchange for her commitment to complete two years of employment with Defendant.

275. Defendant reasonably expected Alexander to rely on those promises.

276. Plaintiff Alexander reasonably relied on Defendant's promises by relocating from Florida to Alaska, accepting employment with Defendant, arranging her life around the PES Crisis Clinician position, and committing to the two-year employment relationship contemplated by Defendant's sign-on and relocation bonuses.

277. Plaintiff Alexander's reliance on Defendant's promises was reasonable and foreseeable.

278. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

279. Defendant is liable for their acts and omissions because Delgado, Yeoman, Human Resources personnel, and other managers (1) acted within the scope

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

Case 3:26-cv-00278-SLG     Document 1-1     Filed 07/28/26     Page 47 of 56

Exhibit A, Page 47 of 56

of their employment, (2) used authority delegated by Defendant, (3) controlled Alexander's employment relationship, and/or (4) because Defendant had actual notice and failed to take prompt and effective corrective action.

280. Contrary to those promises, Defendant removed Alexander from the PES Crisis Clinician role, reassigned her to substantially different duties, deprived her of the position for which she had been recruited, and thereafter subjected her to unlawful disparate treatment based on her race, created an untenable work environment that ultimately resulted in her constructive discharge.

281. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness information, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

282. Injustice can only be avoided by enforcing Defendant's promises or compensating Plaintiff Alexander for her reliance damages.

283. As a direct and proximate result of Defendant's conduct, Alexander suffered damages, including lost wages, lost benefits, relocation-related damages, bonus-related damages, emotional distress damages where recoverable, and other damages to be proven at trial.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

Alexander et al. v. Central Peninsula Hospital, Case No. 3KN-26_____                                           46 of 54
Case 3:26-cv-00278-SLG     Document 1-1     Filed 07/28/26     Page 48 of 56
Exhibit A, Page 48 of 56

## EIGHTH CAUSE OF ACTION
### Negligent Supervision and Retention

284. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

285. Defendant employed Delgado and Yeoman and placed them in supervisory, managerial, and/or decision making positions over Plaintiffs.

286. Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

287. Defendant owed Plaintiffs a duty to use reasonable care in supervising and retaining employees with authority over them.

288. Defendant knew or should have known that Delgado and Yeoman were subjecting Plaintiffs to discriminatory, retaliatory, hostile, and abusive workplace treatment.

289. Defendant had actual notice through Plaintiffs' complaints, written reports, corroborating witness information, and the obvious racial disparity in treatment.

290. Defendant failed to reasonably investigate, supervise, discipline, remove, restrict, or otherwise correct Delgado and Yeoman's conduct.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

291. Defendant failed to interview key witnesses, failed to protect Plaintiffs from further harm, and allowed Delgado and Yeoman to continue exercising authority over Plaintiffs after notice.

292. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness statements, documented harm to Plaintiffs, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

293. Defendant's failure to supervise and retain Delgado and Yeoman caused the discriminatory, retaliatory, hostile, and abusive conduct to continue and worsen.

294. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered damages, including lost wages, lost benefits, relocation expenses, emotional distress, humiliation, physical symptoms, and other damages to be proven at trial.

## NINTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

295. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

296. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

297. Defendant is liable for their acts and omissions because they (1) acted within the scope of their employment, (2) used authority delegated by Defendant, controlled Plaintiffs' working conditions, and/or (3) because Defendant had actual notice and failed to take prompt and effective corrective action.

298. Defendant, through its managers, supervisors, employees, and agents, engaged in extreme and outrageous conduct toward Plaintiffs.

299. Through Delgado and Yeoman, Defendant's conduct included intentional targeting, racially disparate treatment, false accusations, public or workplace mischaracterizations, threats or statements about firing Plaintiffs, refusal to protect Plaintiffs after repeated complaints, and knowingly permitting the conduct to continue despite Plaintiffs' communications, documented distress, including anxiety, depression, sleep disruption, elevated blood pressure, and other physical and emotional symptoms.

300. Defendant had actual notice that Plaintiffs were suffering adverse physical and emotional symptoms from the work environment.

301. Defendant nevertheless failed to correct the conduct and retained Delgado and Yeoman despite repeated complaints, corroborating witness information, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

302. Through Delgado and Yeoman, Defendant intended to cause Plaintiffs emotional distress or acted with reckless disregard of the likelihood that Plaintiffs would suffer emotional distress.

303. Plaintiffs suffered severe emotional distress.

304. Defendant's conduct caused Plaintiffs' emotional distress and related physical symptoms.

305. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages, including emotional distress, relocation expenses, physical symptoms, lost wages, lost benefits, and other damages to be proven at trial.

## TENTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress Plead in the Alternative of Intentional Infliction of Emotional Distress**

306. Plaintiffs Alexander and Shah reallege and incorporate all preceding paragraphs as though fully set forth herein.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

307. At all relevant times, Delgado, Yeoman, Human Resources personnel, and other managers acted as Defendant's agents, employees, supervisors, and decision makers.

308. Defendant is liable for their acts and omissions because (1) they acted within the scope of their employment, (2) used authority delegated by Defendant, controlled Plaintiffs' working conditions, and/or (3) because Defendant had actual notice and failed to take prompt and effective corrective action.

309. Defendant owed Plaintiffs a duty to exercise reasonable care in responding to known discrimination, retaliation, hostile work conditions, and supervisory misconduct.

310. Defendant breached that duty by failing to reasonably investigate Plaintiffs' complaints, failing to interview key witnesses, failing to take corrective action, and allowing the discriminatory and retaliatory conduct to continue.

311. Defendant knew or should have known that its failure to act would cause Plaintiffs serious emotional distress and related physical harm.

312. Defendant retained Delgado and Yeoman despite repeated complaints, corroborating witness information, documented harm to Plaintiffs, and the departure of both black PES clinicians under Delgado and Yeoman's supervision.

Yuraq Legal Services LLC
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

313. Plaintiffs suffered serious emotional distress and physical symptoms, including anxiety, depression, sleep disruption, hypertension, nausea, insomnia, and other symptoms to be proven at trial.

314. Defendant's negligence caused Plaintiffs' emotional distress and physical symptoms.

315. Plaintiffs plead this claim in the alternative to their intentional tort and statutory discrimination claims.

316. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered damages in an amount to be proven at trial.

## IV.  PRAYER FOR RELIEF

1. WHEREFORE, Plaintiffs CAUTRESE ALEXANDER and SHAIRA SHAH respectfully request that the Court enter judgment in their favor and against Defendant CENTRAL PENINSULA HOSPITAL, and award the following relief:

    a. An award of a declaration that Defendant's conduct violated the Alaska Human Rights Act, Title VII, 42 U.S.C. § 1981, and any other applicable law;

    b. An award of back pay, front pay, past and future lost wages, lost earning capacity, lost employment benefits, lost contractual expectancy,

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636  Fax: 907-318-6926
patsy@yuraqlegal.com

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com

relocation-related losses, housing-related losses, and other economic damages in an amount to be determined at trial;

c. An award of compensatory damages for emotional distress, mental anguish, humiliation, reputational harm, physical symptoms, medical expenses, inconvenience, loss of enjoyment of life, and other noneconomic damages proven at trial;

d. An award of damages arising from Defendant's constructive discharge of Plaintiffs, including past and future lost wages, lost employment benefits, relocation-related losses, housing-related losses, and other consequential damages proven at trial;

e. An award of damages arising from Defendant's breach of contract, promissory estoppel, and/or breach of the implied covenant of good faith and fair dealing, including lost wages, lost benefits, lost employment opportunities, lost contractual benefits, and other consequential damages proven at trial;

f. An award of equitable relief requiring Defendant to remove, redact, correct, and/or issue written retractions of any false, discriminatory, retaliatory, or pretextual disciplinary records, reprimands, performance allegations, or separation-related records, including Shah's Performance

Improvement Plan, maintained in Plaintiffs' personnel files or otherwise by Defendant;

g. An award of punitive damages on any claim for which punitive damages are legally available based upon Defendant's intentional, malicious, reckless, outrageous, and/or bad-faith conduct and deliberate indifference to Plaintiffs' rights;

h. An award of pre-judgment and post-judgment interest as permitted by law;

i. An award of Plaintiffs' reasonable attorney fees and costs; and

j. An award of such other and further relief as the Court deems just and equitable.

**DATED:** June 12, 2026.

Yuraq Legal Services LLC
Attorney for the Plaintiffs

_____

Christina McDonogh, ABA#2111120

**Yuraq Legal Services LLC**
3500 LaTouche Street, Unit 230A
Anchorage, AK 99508
Phone: 907-302-4636   Fax: 907-318-6926
patsy@yuraqlegal.com